***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stanback and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except for modifications regarding plaintiff's ongoing disability.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement dated March 23, 2004 and at the hearing before the deputy commissioner as
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over the parties and the subject matter.
2. All parties have been correctly designated, and there is no question as to mis-joinder or non-joinder of parties.
3. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act on the date of plaintiff's alleged injury, March 11, 2003.
4. Defendant-employer carried an applicable policy of workers' compensation insurance with CNA Insurance Company, on the date of plaintiff's alleged injury, March 11, 2003.
5. Plaintiff and defendant-employer entered into an employment relationship on or about June 23, 2000; an employment relationship existed between plaintiff and defendant-employer on the date of plaintiff's alleged injury, March 11, 2003; and plaintiff last performed work for defendant-employer on or about March 28, 2003.
6. Plaintiff alleges that he injured his lower back on March 11, 2003, and plaintiff does not contend that he injured other body parts and/or that he suffered any injuries while working for defendant-employer on any date other than March 11, 2003.
7. Plaintiff's average weekly wage at the time of his alleged injury was $450.00, yielding a compensation rate of $300.00 per week.
8. The parties complied with the North Carolina Industrial Commission's Order to participate in a mediated settlement conference; the mediated settlement conference occurred on August 25, 2003; the mediated settlement conference ended in a partial settlement of the disputed issues as is documented in the parties' Consent Order; defendants have paid the entire mediator's fee of $750.00; defendants are entitled to be reimbursed by plaintiff in the amount of $375.00.
9. Plaintiff has not worked for defendant-employer or any other employer since March 28, 2003.
10. Plaintiff has previously received $1,000.00 from defendant-employer to which he was not entitled, on account of a check that was inadvertently issued. In the event that plaintiff should recover any compensation benefits, or in the event that the parties should enter into a settlement, then that $1,000.00 shall be considered as a pre-payment against any sums otherwise due plaintiff.
11. Plaintiff received unemployment benefits in the amount of $246.00 per week from April 14, 2003 through August 4, 2003, and defendants are entitled to a credit for these sums pursuant to N.C. Gen. Stat. § 97-42.
12. The parties' Post-Hearing Stipulations I and II are incorporated by reference as if fully set forth herein.
13. Documents stipulated into evidence include the following:
a. Stipulated Exhibit #1 — Plaintiff's medical records
14. The deposition of Leonard Nelson, M.D. was submitted and received in evidence after the hearing before the deputy commissioner.
 ***********
Based upon all the most competent, credible evidence in the record, the Full Commission makes the following
 FINDINGS OF FACT
1. Defendant-employer is a third party staffing service for skilled, semi-skilled and unskilled tradespersons that places its employees at the job sites of others who provide direct supervision of persons so placed. At the time of the injury, plaintiff had worked for defendant-employer on various projects for approximately three years. He had no other employment during that time.
2. On March 11, 2003, plaintiff was assigned by defendant-employer to work at GE Modular Systems on Highway 401 South in Garner. Plaintiff's direct supervisor was Mike Goins. His job involved fixing modular trailers used for office space on construction "headquarters" on various job sites and for temporary classrooms at schools. Plaintiff worked primarily at the "yard" where GE Modular Systems kept and maintained its trailers.
3. On March 11, 2003 plaintiff was working with his supervisor, Mike Goins, and riding in a truck owned by GE Modular Services. While climbing out of and exiting a transfer truck, he felt a severe pain in his back.
4. Plaintiff immediately told Mike Goins that he hurt his back and that he thought that he had pulled a muscle, but that he would try to continue working. Plaintiff did not consider the situation to be "a big deal" at the time. Plaintiff worked for a couple of days that week for GE Modular Systems, but left later in the week due to the pain.
5. Consistent with the general practice employed by plaintiff, GE Modular Systems and Tradesmen, plaintiff completed his time card provided by Tradesmen at the end of the week during which he sustained the injury. Plaintiff noted on his time card for the week of March 10-14, 2003, that he had sustained an on-the-job injury. Plaintiff continued to work for defendant-employer after March 11, 2003, but his back pain continued to worsen.
6. Plaintiff went to Wake Med emergency room on March 31, 2003 complaining of lower back pain that began "when he stepped out of a truck three weeks ago." The emergency room physician, Jervi David Cicin, DO, diagnosed a lumbar strain and provided plaintiff a work note restricting him from climbing on ladders for four days.
7. Plaintiff provided defendant-employer with a copy of the work note from Dr. Cicin. Defendants' Exhibit 3A, entitled "Plaintiff Separation Information," indicates that defendant-employer had in its possession a "doctor note [that] says he can't work anyway" when plaintiff was terminated from employment.
8. Upon receiving plaintiff's work restrictions, defendant-employer did not offer plaintiff suitable work that complied with his restrictions.
9. Plaintiff last worked for defendant-employer on March 28, 2003. While defendant-employer did not inform plaintiff that he was terminated, they assigned him no work after March 28, 2003.
10. On March 14, 2003, plaintiff spoke with Mr. Charlie Thomke at Tradesmen. During that conversation, Mr. Thomke told plaintiff that he was denying plaintiff's claim and that plaintiff was supposed to report injuries within two hours of their occurrence.
11. Defendant-employer completed an Employee Separation Information Form terminating plaintiff on April 18, 2003, with a retroactive date of March 28, 2003. On or about March 21, 2003, plaintiff completed an employee incident report that is consistent with his hearing testimony and plaintiff's original report of injury. The form bears the signature of Mr. Thomke.
12. During the course of his employment with defendant-employer, plaintiff routinely worked fewer than 40 hours per week. On December 19, 2002 defendant-employer paid plaintiff for a painting job he had not yet performed. Plaintiff was informed that if he were to fail to complete the job, the payment for the same would be taken out of a future paycheck. Plaintiff was unable to perform the job due to weather conditions and due to his injury. Defendant-employer did not take the payment out of any of plaintiff's checks as indicated.
13. The aforementioned Plaintiff Separation Information Form indicates that plaintiff was terminated from employment due to his not completing the work for which he had already been paid (a reference to the painting job plaintiff was paid for on December 12, 2002). That same form also indicates that a doctor had said that plaintiff was unable to work at the time. Defendant-employer also cited absenteeism as a reason for plaintiff's termination, even though plaintiff consistently worked less than 40 hours per week. Based upon the greater weight of the evidence, the reasons given for plaintiff's termination are not legitimate. Additionally, the greater weight of the evidence does not establish that plaintiff's termination was unrelated to his disability or that he was terminated under circumstances in which another non-disabled plaintiff would have been terminated.
14. Plaintiff was referred to Leonard D. Nelson, M.D. who first saw him on July 23, 2003. Dr. Nelson referred plaintiff for an MRI which was performed on September 26, 2003. Dr. Nelson determined that there were no surgical abnormalities present and assigned plaintiff a 5% permanent partial impairment rating to his lower back.
15. Dr. Nelson opined that plaintiff's symptoms were related to his original injury by accident of March 11, 2003 and that getting out of the truck aggravated plaintiff's pre-existing degenerative spinal changes.
16. An FCE performed January 21, 2004 indicates that plaintiff is able to perform work in a light to medium capacity. While there is evidence plaintiff sought employment as required by the Employment Security Commission while receiving unemployment benefits, there is insufficient credible evidence that plaintiff has continued to make a reasonable search for employment since his unemployment benefits ended.
 *********** CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident or specific traumatic incident to his lower back on March 11, 2003. N.C. Gen. Stat. § 97-2(6).
2. Defendants have failed to demonstrate by the greater weight of the evidence that plaintiff's termination was either unrelated to his disability, or that another non-disabled plaintiff would have been terminated under the same or similar circumstances.Seagraves v. The Austin Company, 123 N.C. App. 228
(1996).
3. As a result of his injury by accident of March 11, 2003, plaintiff has been disabled from March 28, 2003 to January 21, 2004. Plaintiff is accordingly entitled to temporary total disability benefits from March 28, 2003 to January 21, 2004. N.C. Gen. Stat. § 97-29.
4. Disability may be proven in one of four ways: (1) the production of medical evidence that the employee is physically or mentally, as a consequence of the work-related injury, incapable of work in any employment; (2) the production of evidence that the employee is capable of some work, but has after a reasonable effort been unsuccessful in his efforts to obtain employment; (3) the production of evidence that the employee is capable of some work but that it would be futile because of preexisting condition, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that the employee has obtained other employment at a wage less than that earned prior to the injury. Russell v. LowesProd. Distrib., 108 N.C. App. 762, 425 S.E.2d 454
(1993). Plaintiff has presented insufficient evidence to satisfy his burden of proving that he remained disabled after January 21, 2004 as a result of his compensable injury on March 11, 2003; therefore, plaintiff is entitled to receive no further indemnity benefits pursuant to the Workers' Compensation Act.
5. As a result of his compensable injury, plaintiff sustained a 5% permanent partial impairment to his lower back, and he is entitled to benefits for the same. N.C. Gen. Stat. § 97-31(13).
6. Defendants are entitled to a credit pursuant to N.C. Gen. Stat. § 97-42 for funds received by plaintiff from the North Carolina Employment Security Commission, in the amount of $3,690.00, pursuant to the parties' Stipulation I, and a credit for the $1,000.00 inadvertently paid to plaintiff by defendants as recited herein.
7. Plaintiff is entitled to payment by the defendants of all expenses for medical treatment, incurred or to be incurred, for injury sustained as a result of his injury by accident of March 11, 2003. N.C. Gen. Stat. § 97-25.
 *********** AWARD
1. Defendants shall pay to plaintiff temporary total disability benefits at the rate of $300.00 per week from March 28, 2003 to January 21, 2004. All amounts have accrued and shall be paid in one lump sum. All amounts are subject to attorney's fees as awarded in Paragraph 5 of this Award.
2. Defendants shall pay plaintiff for his 5% rating to his lower back subject to an attorney's fee awarded in Paragraph 5 of this Award.
3. Defendants are entitled to a credit for unemployment compensation received by plaintiff in the amount of $3,690.00, credit for the $1,000.00 previously paid by defendants to plaintiff, and a credit of $375.00 representing plaintiff's share of the mediator's fee and said amounts shall be deducted from the sums due plaintiff pursuant to this AWARD.
4. Defendants shall provide all reasonable and necessary medical care to plaintiff for his injury related to his injury by accident of March 11, 2003, when bills for the same shall have been submitted according to proper Industrial Commission procedure.
5. A reasonable attorney's fee of twenty-five percent (25%) of the sums due plaintiff herein is hereby APPROVED and shall be paid as follows: twenty-five percent (25%) of the accrued sums due plaintiff under Paragraph 1 and 2 of this AWARD (less the credits) shall be deducted from said sums and paid in one lump sum directly to plaintiff's counsel.
6. Defendants shall bear the costs of this action.
This the 13th day of October 2005.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_____________ THOMAS J. BOLCH COMMISSIONER